UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


YASSER A. IBRAHIM,

    Plaintiff,

v.                                        CASE NO: 8:05-cv-1235-T-26MAP

HILLSBOROUGH AREA REGIONAL
TRANSIT AUTHORITY a/k/a HART d/b/a
HART, DONNA LOY, and TROY CHAMPAGNE,

    Defendants.
_____/

**O R D E R**

Before the Court is Defendants' Motion for Summary Judgment, Statement of Undisputed Facts and Supporting Memorandum of Law,[1] and Plaintiff's Response, Statement of Facts, and Memorandum of Law in Opposition.[2] After careful consideration of the submissions of the parties and the entire file, the Court concludes that summary judgment should be granted.

**Background**

Plaintiff Yasser A. Ibrahim worked as a mechanic for Defendant Hillsborough Area Regional Transit Authority (Hartline) from July 1999 through February 3, 2005,

---

[1] See docket 50.

[2] See docket 64.

when he was terminated. Mr. Ibrahim is a Muslim of Arab descent. In this action, he alleges that he was discriminated against on the basis of national origin and religion when Hartline failed to promote him to three job positions for which he internally applied, and discriminated and retaliated against him when Hartline not only failed to promote him to a fourth job position but it terminated him after he had filed his first claim with the Equal Employment Opportunity Commission (EEOC). The Amended Complaint contains the following five counts,[3] the first four against Hartline and the last against Defendants Donna Loy and Troy Champagne:[4] (1) violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., against Hartline for harassment, failure to promote, and discharge based on national origin and religion (count I); (2) violations of the Florida Civil Rights Act of 1992 (FCRA) against Hartline for discrimination based on national origin and religion (count II); (3) violations of Title VII against Hartline for retaliation over filing a charge of discrimination with the EEOC (count III); (4) violations of the FCRA against Hartline for retaliation (count IV); and (5) violations of 42 U.S.C. § 1981 against

---

[3] The Amended Complaint actually contains six counts; however, Plaintiff's counsel agreed to dismiss count VI for violation of the Florida Whistle Blowers's Act. (Dkt. 50 at fn. 1). The Stipulated Notice of Voluntary Dismissal of Count VI appears at docket 66.

[4] Donna Loy served as the Maintenance Manager from 1999 through 2005, and supervised first level supervisors of Mr. Ibrahim. (Dkt. 51, Aff. Loy at para. 4). Troy Champagne served as a Maintenance Supervisor since December 1999, and supervised Mr. Ibrahim. (Dkt. 51, Aff. Champagne at paras. 3 & 4).

Defendants Loy and Champagne for harassment, discrimination, and discharge based on national origin and religion (count V).

The four positions for which Mr. Ibrahim applied include Maintenance Training Instructor for which he was rejected on February 4, 2004, Communications & Electronics Coordinator for which he was rejected on March 25, 2004, Superintendent of Vehicle Maintenance & Quality Assurance for which he was rejected on May 7, 2004, and, finally, Director of Maintenance for which he was rejected on September 14, 2005.  Mr. Ibrahim filed his first charge of discrimination on August 30, 2004, and his second charge with the EEOC on February 17, 2005, after he was terminated.  Mr. Ibrahim was promoted two times during his tenure with Hartline, once in July 2000 to Mechanic B position, and another time in July 2001 to Mechanic A position.  A Mechanic B is responsible for mid-level maintenance of Hartline's transit vehicles, mechanical equipment, and automotive vehicles.  A Mechanic A is a skilled position which calls for the major repair and maintenance of vehicles and equipment.  He received raises along with the promotions.

His first charge of discrimination complained of religion-based and national origin-based discrimination from February 4, 2004 to May 7, 2004.[5]  He wrote that he had not received a promotion in almost a year despite applying for several recent job openings.  He averred that the positions were filled by individuals with lesser

---

[5] See docket 51, Exh. to excerpt of Depo. of Ibrahim.

qualifications, specifically mentioning the positions of Mechanics Training Instructor, Communications & Electronics Coordinator, and Superintendent of Vehicle Maintenance & Quality Assurance. He amended this charge on December 5, 2004, to add the denial of promotion to the position of Director of Maintenance.[6] He alleged that the failure to promote was an act of retaliation for filing the initial charge.

He filed a second charge of discrimination after he was terminated.[7] On March 10, 2005, he wrote that he filed an internal grievance on February 3, 2005, that alleged he had been discriminated against because of his Egyptian origin and his Muslim religion. He claimed that he was discharged on February 3, 2005, in retaliation for filing the initial charge of discrimination with the EEOC and for filing the internal grievance.

On March 16, 2005, the EEOC issued a letter of determination announcing that Mr. Ibrahim established a prima facie case that he was denied promotions for "Mechanics Training Supervisor" (February 2004) and Communications & Electronics Coordinator (March 2004), finding that Hartline's proffered reason for denying the promotion "appears to be a pretext for illegal discrimination against" Mr. Ibrahim. The EEOC, however, was "unable to conclude that information obtained during the investigation" resulted in violations with respect to promotions to Superintendent of Vehicle Maintenance & Quality Assurance and Director of Maintenance.

---

[6] See docket

[7] See docket 51, Exh. to excerpt of Depo. of Ibrahim.

After the file was turned over to the EEOC's investigator, another letter was issued by the EEOC, setting forth the position statement of Hartline so that Mr. Ibrahim could respond.[8] The EEOC issued a notice of right to sue for each of the charges of discrimination.

**Denial of Promotion to Maintenance Training Instructor**

In November 2003, Mr. Ibrahim applied in-house for the position of Maintenance Training Instructor.[9] The job description mandated that the applicants must possess an associate degree in automotive technology and a minimum of four years' classroom and hands-on instruction.[10] Mr. Ibrahim's in-house application stated that he had a bachelor's degree in mechanical engineering, further training in production management and information technology, but no experience in classroom instruction.[11] James Udell, who had formal training in classroom teaching, was hired for the position. Mr. Udell received a bachelor's degree from the University of Wisconsin in industrial technology.[12] He worked as a training instructor for John Deere, Komatsu America, Compaction America, and Daewoo for a total of nine years. On February 4, 2004, Mr. Ibrahim was notified in

---

[8]  See docket 27, Exh. 3.

[9]  See docket 51, Aff. Blichasz. Mr. Blichasz has worked in the Human Resources (HR) Department of Hartline since 2003. He worked as an HR employment specialist and assisted in screening applications for various positions.

[10]  See docket 51, Aff. Blichasz at para. 7.

[11]  See docket 51, Aff. Blichasz at para. 8.

[12]  See docket 51, Aff. Blichasz at Exh. 5.

writing that he had not been selected for the position because he lacked the formal training experience "related to the instruction of diesel mechanics."[13]

Mr. Ibrahim asserts that he has a degree in mechanical engineering, an associate's degree in business management, two years of graduate study in electronic engineering, and fifteen years of work experience as an engineer.[14] Mr. Ibrahim avers that his "engineering bachelor degree" is a five-year degree from a university in Egypt, his two-year business management degree from Germany is the equivalent of a bachelor's degree, and his two years of additional graduate work in electronic engineering is the equivalent of a second bachelor's degree in engineering.[15] He avers that it is unfair to compare his clearly superior educational background of the equivalent of three bachelor's degrees to his comparators' education and experience.[16]

**Denial of Promotion to Communications & Electronics Coordinator**

In January 2004, Mr. Ibrahim applied in-house for the position of Communications and Electronic Coordinator. The requirements included a minimum of five years' experience in the electronics systems field and either a bachelor's degree or two years' related experience for each year of college.[17] Mr. Ibrahim met the qualifications so he

---

[13] See docket 51, Aff. Blichasz at Exh. 4.

[14] See docket 71, Aff. Ibrahim at paras. 3 & 4.

[15] See docket 71, Aff. Ibrahim at paras. 3, 4 & 11.

[16] See docket 71, Aff. Ibrahim at paras. 3 & 4.

[17] See docket 51, Aff. Blichasz at paras. 10 & 11 & Exh. 6.

was granted an interview.[18]  He did not receive high marks on the interview, however, because his communications skills were poor and his clothing was dirty.[19]  He scored the lowest among the interviewees and was therefore not offered the position.[20]  The position was offered to the highest scoring applicant, Steven Taylor, who had twenty-four years of experience in the Marines and Navy, mostly in electronics and communications, which substituted for the lack of a bachelor's degree.[21]  On March 25, 2004, Mr. Ibrahim was notified in writing that he had not been selected for the position.[22]

### Denial of Promotion to Superintendent of Vehicle Maintenance & Quality Assurance

In March 2004, Mr. Ibrahim applied in-house for the position of Superintendent of Maintenance and Quality Assurance.[23]  The job description required five years' experience in fleet maintenance and management, and either a bachelor's degree in a related field or two years of related field experience per each year of college.[24]  Mr. Ibrahim was not chosen for an interview because he did not have the requisite

---

[18]  Walter Blichasz and Donna Loy were members of the interview panel.  (Dkt. 51, Aff. Blichasz at para. 11; Aff. Loy at para. 6).

[19]  See docket 51, Aff. Blichasz at para. 12; Aff. Loy at para. 6.

[20]  See docket 51, Aff. Blichasz at para. 12 & Exhs. 7 & 8.

[21]  See docket 51, Aff. Blichasz at para. 13 & Exhs. 7 & 9.

[22]  See docket 51, Aff. Blichasz at Exh. 8.

[23]  See docket 51, Aff. Blichasz at para. 14 & Exh. 10.

[24]  See docket 51, Aff. Blichasz at para. 14 & Exh. 10.

management experience.[25] Robert Andis was hired for the position. Although Mr. Andis did not hold a bachelor's degree, he had been employed by two other public transit authorities in managerial positions and also possessed extensive fleet maintenance experience.[26] Mr. Andis had previously worked for Hartline for sixteen years as a mechanic. On May 7, 2004, Mr. Ibrahim was notified in writing that he was not chosen for the position.[27]

### Denial of Promotion to Director of Maintenance/Retaliation

In April 2004, Mr. Ibrahim applied for the position of Director of Maintenance.[28] The job description required at least five years of management experience, three years of maintenance experience, and a bachelor's degree or two years' experience for each year of college.[29] Mr. Ibrahim was not selected for an interview because he did not have the experience required.[30] Edward Bart was chosen for the position. Mr. Bart held a bachelor's degree in business administration, and possessed many years' experience as the director of maintenance in Volusia County, Florida and the United States Army.[31] On

---

[25] See docket 51, Aff. Blichasz at para. 15.

[26] See docket 51, Aff. Blichasz at para. 16 & Exh. 13.

[27] See docket 51, Aff. Blichasz at Exh. 12.

[28] See docket 51, Aff. Blichasz at para. 17.

[29] See docket 51, Aff. Blichasz at para. 17 & Exh. 14.

[30] See docket 51, Aff. Blichasz at para. 18.

[31] See docket 51, Aff. Blichasz at para. 19 & Exh.17.

September 14, 2004, Mr. Ibrahim was notified in writing that the position had been filled by someone else.[32] Mr. Blichasz averred that Mr. Ibrahim did not submit the more thorough resume he now submits at the time he applied for all four positions.[33] Mr. Blichasz also averred that he was not aware of Mr. Ibrahim's filing of the EEOC charge at the time he applied for this position.

### Discharge/Retaliation

On February 3, 2005, an incident precipitated the immediate discharge of Mr. Ibrahim. Mr. Champagne, Mr. Ibrahim's supervisor at the time, instructed Mr. Ibrahim to install a starter. Over one hour passed, yet Mr. Ibrahim was walking around holding a cup of coffee and had not begun the project.[34] Mr. Champagne questioned Mr. Ibrahim about why he was not installing the starter, and Mr. Ibrahim began yelling that he was harassing him—that Mr. Champagne would not have questioned Mr. Ibrahim's Jewish co-worker about what he was doing. Mr. Ibrahim was visibly and audibly upset, and, at the very least, threw a wrench into a tool box.[35] Mr. Ibrahim gained the attention of Ms.

---

[32] See docket 51, Aff. Blichasz at Exh. 16.

[33] See docket 51, Aff. Blichasz at para. 20 & Exh. 18.

[34] See docket 51, Aff. Champagne at para. 5.

[35] Ms. Loy, as well as three co-workers and Mr. Champagne, saw Mr. Ibrahim throw the wrench. (Dkt. 51, Aff. Loy at para. 9, Exh. 2; Aff. Champagne at Exh. 1). Ms. Loy thought that he threw the wrench at his co-worker Jose Vargas. The three co-workers all filed written statements acknowledging that they witnessed Mr. Ibrahim yelling and arguing with his supervisor, Mr. Champagne.
  Mr. Ibrahim takes issue with the fact that he did not throw the wrench at Mr. Vargas. He filed an affidavit of Mr. Vargas in which Mr. Vargas avers that he did not see

Loy and Everardo Prieto. When Ms. Loy asked him to calm down and lower his voice, he refused to do so and responded that he could talk in whatever manner he desired. He did not quiet down, but remained loud and angry. Mr. Ibrahim does not dispute this.[36] Ms. Loy told him she was placing him on "pending investigation" or PI. Mr. Ibrahim was escorted out of the building by Mr. Prieto.

Mr. Ibrahim was charged with four violations of rules in the workplace and the collective bargaining agreement between Hartline and the local Tampa chapter of Amalgamated Transit Union: (1) use of threat or force (against the Hartline staff—dismissal); (2) indecent, lewd, or vulgar conduct (calling a co-worker "the Jew" as a racial slur—dismissal); (3) refusal to follow instructions/insubordination (refusing to

---

Mr. Ibrahim throw a wrench at him, was not hit by a wrench, and did not see Mr. Ibrahim swinging a seat belt. (Dkt. 62, Aff. Vargas). The affidavit does not contradict his prior statement because in his prior statement, he stated that he saw Mr. Ibrahim throw a tool into his toolbox. A close reading of the file indicates that no one claims that he threw the wrench at Mr. Vargas, but rather the wrench almost hit Mr. Vargas because it ricocheted off of the toolbox. In any event, it is irrelevant whether Mr. Vargas was placed in fear of being hit by the tool. What is relevant is the general demeanor of Mr. Ibrahim and his loud and agitated conduct with respect to his workplace and his supervisor.

[36] See docket 71, Aff. Ibrahim. In Mr. Abrahim's twenty-four page affidavit, he refers to additional job positions he applied for within the company such as electronic technicians, before he applied for the managerial positions at issue in this lawsuit. His EEOC charge is unequivocally directed to the acts of failure to promote beginning February 4, 2004. Thus, the positions he applied for prior to this date are necessarily excluded from this lawsuit based on his failure to exhaust administrative remedies with the EEOC. See Gregory v. Georgia Dept. of Human Resources, 355 F.3d 1277, 1280 (11th Cir. 2004) (holding that charge of discrimination must first be filed with EEOC because EEOC "should have first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts").

answer his supervisors and refusing to quiet down—dismissal); and (4) failing to actively and properly engage in work duties/responsibilities (walking around for over an hour with a coffee cup in hand rather than installing starter as requested— reprimand).[37]  After an internal investigation and a hearing, which Mr. Ibrahim attended, on February 14, 2005, the pending charges against Mr. Ibrahim were substantiated.  The first three infractions, even each standing alone, could result in discharge without progressive discipline according to the collective bargaining agreement.[38]

### Failure to Promote

To establish a prima facie case of discriminatory failure to promote, the following four factors must be met: "(1) he is a member of a protected class; (2) he was qualified and applied for the promotion; (3) he was rejected despite his qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004).[39]  Assuming that Mr. Ibrahim has set forth a prima facie case, the last element— other equally or less qualified employees were promoted— comes into play with respect to the articulation of a legitimate non-discriminatory reason for the failure to promote.  The issue is whether Mr. Ibrahim has proffered "sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is

---

[37]   See docket 51, Aff. Lavado, Exh. 1.

[38]   See docket 51, Aff. Lavado at para. 6, Exh. 2.

[39]   See also Price v. M & H Valve Co., 177 Fed.Appx. 1, 12 (11th Cir. 2006).

pretextual." See Chapman v. Al Transport, 229 F.3d 1012, 1025 (11th Cir. 2000). The Court finds that he has not.

Hartline's articulated reasons for denying Mr. Ibrahim a promotion to each of the four positions is that he was not as qualified for the position as the four individuals who received the promotions. The Eleventh Circuit has recognized the preferred test for determining whether a comparator is equally or less qualified. The plaintiff must show that the disparities in qualifications "must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." See Cooper v. Southern Co., 390 F.3d 695, 732 (11th Cir. 2004), cert. denied, — U.S.— , 126 S.Ct. 478, 163 L.Ed.2d 363 (2005), and criticized by Ash v. Tyson Foods, Inc., 126 S.Ct. 1195, 1197 (2006).[40]

Two of the four comparators, Mr. Udell and Mr. Bart, not only held bachelor's degrees but they also possessed many years of experience in working as an instructor and in working as a maintenance director managing people, respectively. As for the two comparators who did not hold bachelor's degrees, Mr. Taylor and Mr. Andis, the job

---

[40] The Supreme Court expressed its disregard with the test also espoused in Cooper— that the qualifications of the comparator must virtually "jump off the page and slap you in the face" before pretext can be found. In Ash v. Tyson Foods, Inc. 190 Fed.Appx. 924 at *3 (11th Cir. 2006), the Eleventh Circuit noted that it had taken the Supreme Court's words to heart and employed the Cooper standard in holding that "comparative qualifications and other alleged indicia of discrimination (i.e., subjective criteria used by the decision-maker, plaintiff's belief that his (or her) qualifications were superior), were held insufficient for a factfinder reasonably to find that the decision was not based on the qualifications of the applicants." Id., citing Brooks v. County Com'n of Jefferson County, Al., 446 F.3d 1160(11th Cir. 2006), and Price.

requirements stated that every two years of experience or training could count as one year of formal education. Indeed, for all four positions, the exchange of one year's formal education for two years' experience was clear. Thus, while Mr. Ibrahim contends that he had more years of formal education than the four comparators, he completely ignores the fact that the numerous years' experience of the comparators in the sought-after fields far outweighed the years of formal education he possessed. In any event, the record does not show that he possessed experience in management or instruction, which were the two fields required for managerial positions.

Mr. Ibrahim did not even qualify to be granted an interview for three of the positions, all except the Communications and Electronic Coordinator. In the interview process conducted for the Coordinator, Mr. Ibrahim received poor marks for his communication skills and the cleanliness of his dress. Mr. Ibrahim does not dispute the characterization of his communication skills or his dress at the interview. Instead, he argues that he was denied the promotions because he is a Muslim of Arab descent. This argument will not prove that Hartline's proffered non-discriminatory reasons were pretextual. The test to determine pretext is whether the plaintiff established "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Price v. M & H Valve Co., 177 Fed. Appx. 1, 12 (11th Cir. Apr. 7, 2006) (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997)). Mr. Ibrahim cannot prove pretext by claiming he was more qualified than the

individuals who received the promotions. Hartline's wisdom may not be questioned as long as "the reason is one that might motivate a reasonable employer." Id. at 13 (quoting Pennington v. City of Huntsville, 261 F.3d 1262, 1267 (11th Cir. 2001)). The Court finds nothing in the record to suggest that Hartline's decisions not to promote Mr. Ibrahim in any of the four instances at issue were motivated by religious or national origin animus.

**Retaliation**

To establish a prima facie case of retaliation, the following three elements must be shown: (1) he engaged in statutorily protected activity; (2) an adverse employment action occurred; and (3) the adverse action was causally related to the plaintiff's protected activities. See Little v. United Technologies, 103 F.3d 956, 959 (11th Cir. 1997).[41] Mr. Ibrahim engaged in statutorily protected activity when he filed the charge of discrimination with the EEOC. There is nothing in the record that supports a finding that he did not receive any of the promotions because he was being retaliated against for filing a charge with the EEOC. In any event, the only act of retaliation raised in the charge was the failure to promote to the last position of Director of Maintenance and his discharge.

Mr. Ibrahim was discharged after the February 2005 incident in which he was found to have committed four infractions of workplace rules— use of threat or force; indecent, lewd, or vulgar conduct; refusal to follow instructions, or insubordination; and

---

[41] As Hartline correctly points out, Mr. Ibrahim cannot establish a prima facie case of retaliation for the denial of the promotion to Director of Maintenance, because on September 14, 2004, Mr. Blichasz was unaware that Mr. Ibrahim had filed a charge with the EEOC. (Dkt. 50 at pg. 16).

failing to actively and properly engage in work responsibilities and duties. Focusing on the "employer's perception"[42] at the time of the incident, however, Hartline has shown that it "honestly believed" Mr. Ibrahim committed the violation. See Jones v. Winn Dixie Stores, Inc., 75 F.Supp.2d 1357, 1364 n.2 (S.D. Fla. 1999). Mr. Ibrahim has not even shown that the decision to discharge him based on the misconduct was based on erroneous facts or based on no facts at all,[43] and he has failed to show that it was motivated by animus toward his religion or national origin. Moreover, Mr. Ibrahim cannot show that any other individual similarly situated was not terminated as a result of similar conduct. Cf. McCalister v. Hillsborough County Sheriff, No. 06-12999, 2006 WL 3741883 (11th Cir. Dec. 20, 2006) (holding that plaintiff must show similarly situated employees who received less severe disciplinary actions engaged in quantity and quality of misconduct similar or "nearly identical" without being discharged).

### Individual Liability of Loy and Champagne

Having determined that Mr. Ibrahim has not shown that he was deprived of any clearly established constitutional rights, the Court finds that Ms. Loy and Mr. Champagne are entitled to qualified immunity. Supervisors Loy and Champagne had a lawful reason

---

[42] Jones v. Winn Dixie Stores, Inc., 75 F.Supp.2d 1357, 1365-66 (S.D. Fla. 1999) (citing Chaney v. Southern Railway Co, 187 F.2d 718 (11th Cir. 1988)).

[43] "The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all, as long as its action is not for a discriminatory reason." Nix v. WLCY Radio/Rahall Comm., 738 F.2d 1181, 1187 (11th Cir. 1984).

to place Mr. Ibrahim on pending investigation status because of his failure to obey the requests of either of them and his hostile conduct. The record does not make it plain that the conduct of either Ms. Loy or Mr. Champagne was the result of any unlawful motive. See Foy v. Hoslton, 94 F.3d 1528, 1534-35 (11th Cir. 1996).

It is therefore **ORDERED AND ADJUDGED** as follows:

(1) Defendants' Motion for Summary Judgment is **GRANTED**.

(2) The Clerk is directed to enter judgment in favor of Defendants and against Plaintiff.

(3) The Clerk is directed to close the file.

**DONE AND ORDERED** at Tampa, Florida, on March 30, 2007.

  s/*Richard A. Lazzara*
  **RICHARD A. LAZZARA**
  **UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record